UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Case No.

KENNETH DEAL,

    Plaintiff,

v.

THE CITY OF MONROE, a North Carolina municipal corporation,

    Defendant.

**VERIFIED COMPLAINT**

[JURY TRIAL DEMANDED]

1. Plaintiff Kenneth Deal is a retired Navy officer who, for the past several years, has served Defendant City of Monroe, North Carolina (the "City"), as a member of its Planning Board and Board of Adjustment. During his tenure on those boards, Deal exhibited a willingness to stand up to irresponsible developers. By doing so, Deal fostered and facilitated smart, sustainable growth and development for the benefit of the City and its residents.

2. On August 13, 2024, at a regular meeting of the Monroe City Council (the "Council"), Councilmember James Kerr, a real estate broker, made a motion to remove Deal from his position on the Planning Board and the Board of Adjustment. No discussion of Deal's position or removal appeared on the meeting agenda, and Kerr offered no explanation or basis for the motion. Deal had no idea that he would be a topic of discussion at the August 13, 2024, meeting (i.e., he received no notice of any issue with his performance or of any intention on the part of Council to remove him),

and Deal did not attend that meeting. Councilmember Julie Thompson seconded the motion and the motion carried 5-2.

3. Deal had a vested property interest in his position on the Board of Adjustment. Under section 160D-302(a) of the North Carolina General Statutes, "[a] local government may by ordinance provide for the appointment and compensation of a board of adjustment consisting of five or more members, each to be appointed for three-year terms." The City adopted an ordinance, section 32.070 *et seq.* of the Monroe Code of Ordinances (the "City Code"), creating the Board of Adjustment and providing for "three-year staggered terms." Deal was last appointed to a three-year term effective December 31, 2023—Deal had a vested property interest in continuing in that position, then, until December 31, 2026.[1]

4. By removing Deal from the Board of Adjustment without notice or opportunity to be heard and for no legally sufficient cause, the City deprived Deal of his property without due process in violation of Deal's Fourteenth Amendment rights. This action follows.

## Parties

5. Deal is a citizen and resident of Union County, North Carolina.

6. The City is a North Carolina municipal corporation situated in Union County, North Carolina.

---

[1] Under section 32.071 of the City Code, Board of Adjustment members received compensation ranging from $50 to $75 per meeting attended.

## Jurisdiction & Venue

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this case arises under federal law.

8. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(1)–(2) because the City is situated in this District and because a substantial part of the events or omissions giving rise to the claim occurred in, or a substantial part of property that is the subject of the action is situated in, this District.

## Waiver of Immunity

9. The City is not immune from Deal's claims arising under 42 U.S.C. § 1983.

10. Alternatively, the City has waived immunity through the purchase of liability insurance applicable to the claims in this action.

11. Alternatively, the City has waived immunity by participating in a local government risk pool within the meaning of section 160A-485(a) of the North Carolina General Statutes, which provides coverage for the claims alleged herein.

## State Law & Local Ordinances governing the Board of Adjustment

12. Section 160D-302(a) of the North Carolina General Statutes authorizes local government units to "by ordinance provide for the appointment and compensation of a board of adjustment consisting of five or more members, each to be appointed for three-year terms." The duties of a board of adjustment as to "hear and decide all matters upon which it is required to pass under any statute or development regulations adopted under [Chapter 160D.]"

13. Section 32.070 of the City Code created the "Board of Adjustment of the City of Monroe."

14. Under section 32.071(B) of the City Code, members of the Board of Adjustment "shall be appointed for three-year staggered terms expiring on December 31st."

15. Section 32.071(A)(2) of the City Code sets the compensation that members of the Board of Adjustment receive, providing that "[t]he chairperson shall receive seventy-five (75) dollars per meeting attended" and that "[a]ll other members shall receive fifty (50) dollars per meeting attended."

16. The City does not have the power under state law to remove a member of its Board of Adjustment prior to the expiration of the member's term without sufficient cause and without notice and opportunity to be heard.

<u>Deal's Service to the City of Monroe &
Removal without Notice or Cause</u>

17. Deal retired from his post as a Commander with the Navy in 2007 after a 35-year career, during which time he commanded a Navy Battalion and two Army Battalions consisting of over 1,000 military personnel forward deployed as a Joint Task Group in support of the Global War on Terrorism. He received more than 40 personal awards and citations for his unwavering integrity, professionalism, and superior performance of duty. In 2007, the Secretary of Defense presented him with the Legion of Merit Award on behalf of the President of the United States, which is one of the highest non-combat medals awarded by the military.

18. In December 2020, Deal continued his lifetime of public service by applying to join the Board of Adjustment. His application was approved, and the City appointed Deal to a seat on the Board of Adjustment that would expire on December 31, 2023.

19. The City re-appointed Deal as the Chairman of the Board of Adjustment in December 2023, with a term that would not have expired until December 31, 2026.

20. Deal was first appointed to the Planning Board in 2021. On January 1, 2024, the City reappointed Deal for a 4-year term—that term would not have expired until December 31, 2027.

21. In March 2024, Deal was appointed Chairman of the Planning Board.

22. On August 13, 2024, the City Council held a regular meeting (the "August 13 Meeting").[2]

23. The August 13 Meeting agenda made no reference to Deal or to the consideration of the removal of any member of the Planning Board or Board of Adjustment.

24. The August 13 Meeting agenda was never modified or amended to include any reference to Deal or to the consideration of the removal of any member of the Planning Board or Board of Adjustment.

25. Near the beginning of the meeting, Councilmember Kerr asked to be heard. Mayor John Burns recognized the Councilmember and gave him the floor.

---

[2] The August 13 Meeting minutes have not been published to the City's website as of the date of this Verified Complaint.

26. At that point, Councilmember Kerr made a motion to remove Deal from the Planning Board and the Board of Adjustment. Councilmember Thompson seconded.

27. Councilmember Kerr offered no explanation for the motion or reason justifying Deal's removal. When the Mayor Pro Tempore asked Kerr to explain the motion, Kerr asked the City Attorney whether he had to provide any explanation. The City Attorney advised that all board members serve at the pleasure of the Council and advised Kerr that he was not obligated to provide any reason for the motion. On that basis, Kerr declined to provide a reason.

28. After the Mayor Pro Tempore and the Mayor voiced their objections both to the substance of the motion (i.e., they supported Deal and wanted Deal to remain a member of the Planning Board and the Board of Adjustment), Councilmember Kerr said: "A final word Mr. Mayor, this motion is without malice, and as Councilwoman Anthony so succinctly explained, to dive into the weeds of particular behaviors or incidents would only diminish the service that [Deal] has provided and as stated, members serve at the pleasure of Council, and I appreciate you considering the motion."

29. The implication of Kerr's statement was that Deal had done something so serious and inappropriate as to warrant his immediate removal (without notice or opportunity to be heard), and that disclosing the nature of Deal's conduct would be embarrassing for Deal.

30. After Councilmember's Kerr's statement, the Mayor called the vote, and the motion to remove Deal carried by a vote of 5-2.[3]

31. Deal was not in attendance at the August 13 meeting. He had no reason to be. At no point prior to or during that meeting did anyone from the City or otherwise inform Deal that the City would be considering his removal—nor did anyone from the City or otherwise give him notice of the grounds for his removal.[4]

32. At the September 10, 2024 (the "September 10 Meeting"), regular meeting of the City Council, the Mayor Pro Tempore attempted to make a motion to reconsider the Council's decision to remove Deal. The Mayor Pro Tempore's motion failed, but during the discussion of the motion, Councilmembers Kerr and Anthony referred to an email that they had supposedly seen that they claimed justified the decision.[5]

---

[3] The video recording of the August 13 meeting is available on the City's YouTube Channel, here: https://www.youtube.com/watch?v=br2kRIcdWOg&t=1683s. The events described in the above paragraphs begin at the 16:35 minute mark (18:18:28 on the timestamp on the video) and end at 28:10 (18:28:03 on the timestamp). That portion of the video is incorporated herein by reference.

It is clear from the video of the August 13 meeting that the five members who voted in favor of the measure came to the meeting (a) with information that had not been provided to the Mayor or Mayor Pro Tempore, and (b) prepared to vote to remove Deal (which they did with virtually no discussion and no disclosure of their reasoning).

[4] Mr. Louis Philippi, also a member of the Board of Adjustment and an alternate member of the Planning Board, did just so happen to be in attendance at the August 13 Meeting. He was so disgusted by the manner and fact of Deal's surprise removal that, during the public comment period, he resigned from both boards. Other board members have since followed suit.

[5] The video recording of the September 10 meeting is available on the City's YouTube Channel, here: https://www.youtube.com/watch?v=d_69MUIb00Y&t=14817s. The

33. Deal does not know what email Councilmembers Kerr and Anthony were referring to during the September 10 Meeting. Upon information and belief, the Mayor and the Mayor Pro Tempore have also never seen the email.

34. Deal has been prevented from serving (i.e., prevented from exercising the rights and performing the duties of a member) on the Board of Adjustment since August 13, 2024.

35. Deal's removal from the Board of Adjustment was without legally sufficient cause and without notice and opportunity to be heard.

36. Thus, Deal's removal from the Board of Adjustment was illegal.

37. The City's decision to remove Deal from the Board of Adjustment and, in so doing, to imply that Deal engaged in misconduct serious enough to warrant immediate removal, has caused Deal to suffer damages, including reputational injury.

38. The City is actively soliciting applications to fill Deal's seat on the Board of Adjustment. The City can fill that seat at any regular or special meeting (i.e., at virtually any time it chooses). If the seat is filled, Deal will be forced to bring a quo warranto action against the individual who fills the seat in order to secure his reinstatement to that seat.

---

events described in the above paragraph begin at the 3:58:56 mark in the video (21:56:51 on the timestamp) and end at the 4:07:14 in the video (22:05:10 on the timestamp). That portion of the video is incorporated herein by reference.

39. To this day, Deal does not know why he was removed from the Board of Adjustment. Upon information and belief, that removal was in retaliation for Deal's efforts to ensure that Councilmember Kerr's real-estate development buddies follow the rules like everyone else.

Claim I – 42 U.S.C. § 1983

40. Deal incorporates the above allegations by reference.

41. Section 1983 of Chapter 42 of the U.S. Code provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42. The Fourteenth Amendment to the U.S. Constitution forbids states and their political subdivisions from depriving any person of life, liberty, or property without due process of law.

43. Deal was appointed to the Board of Adjustment for a fixed term of three years, respectively, during which time he would receive compensation of between $50 and $75 per meeting attended.

44. The length of Deal's appointment and the amount of his compensation were functions of state statute and local ordinance—that is, they had the force of law and could not be changed or terminated without sufficient cause and notice and opportunity to be heard.

45. The City terminated Deal's membership on the Board of Adjustment without sufficient cause.

46. The City terminated Deal's membership on the Board of Adjustment without notice or any opportunity to be heard.

47. The City violated Deal's procedural due process rights by terminating his membership on the Board of Adjustment in such fashion.

48. Deal has suffered damages, including but not limited to reputational harm, as a direct and proximate result of the City's violation of Deal's due process rights.

## Claim II – Declaratory Judgment

49. Deal incorporates the above allegations by reference.

50. A controversy exists between Deal and the City over the illegitimacy of the City's decision to terminate Deal's membership on the Board of Adjustment prior to the expiration of the terms of Deal's membership.

51. Section 160D-302(a) of the North Carolina General Statutes sets a mandatory three-year term for individuals appointed to a municipal board of adjustment.

52. Despite clearly providing for a mandatory three-year term for those appointees, section 32.201(E) of the City Code purports to empower the City to remove appointees to the Board of Adjustment at any time for any reason. Specifically, section 32.201(E) of the City Code says that "all [board] members serve

at the pleasure of City Council and may be removed at any time with or without cause at the discretion of City Council."

53. Deal is entitled to a judicial declaration that:

a. section 32.201(E), as applied to Deal, is void and unenforceable because it conflicts with section 160D-302(a) of the North Carolina General Statutes;

b. section 32.201(E), as applied to Deal, is unconstitutional insofar as it purports to empower the City to deprive Deal of a vested property right without notice or cause;

c. the City violated Deal's procedural due process rights when it terminated his membership on the Board of Adjustment without legally sufficient cause;

d. the City violated Deal's procedural due process rights when it terminated his membership on the Board of Adjustment without notice and an opportunity to be heard; and

e. the City's decision to remove Deal from the Board of Adjustment is void and of no effect, and Deal is entitled to immediate reinstatement to his position on the Board of Adjustment.

<u>Prayer for Relief</u>

WHEREFORE, Deal respectfully prays the Court award him the following relief:

1. Preliminary and permanent injunctive relief in the form of an order that the City reinstate him to the Planning Board and the Board of Adjustment;

2. Trial by jury as to all matters so triable;

3. Damages from the City to compensate Deal for the damages he sustained as a result of the City's misconduct;

4. An award of his reasonable attorney's fees and costs to the extent the law allows; and

5. Any other relief the Court deems just and proper.

This 18th day of September, 2024.

Respectfully,



By:   /s/ Bo Caudill
Bo Caudill
N.C. Bar No. 45104
bocaudill@villmercaudill.com
Sophia M. Pappalardo
N.C. Bar No. 56743
sophiapappalardo@villmercaudill.com
VILLMER CAUDILL, PLLC
P.O. Box 18186
Charlotte, NC 28218
Tel: 704-216-8120
Fax: 704-705-8191
*Counsel for Kenneth Deal*

## VERIFICATION

I verify under penalty of perjury that the contents of the foregoing Verified Complaint are true and correct.

Executed this 18th day of September, 2024.

_____
Kenneth Deal