UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-00845-FDW-DCK

| KENNETH DEAL, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| CITY OF MONROE, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff Kenneth Deal's ("Plaintiff") Motion for Partial Summary Judgment,[1] (Doc. No. 15), and Defendant City of Monroe's ("Defendant") Motion for Summary Judgment, (Doc. No. 16.) This matter is fully briefed and is now ripe for review. (Doc. Nos. 15-1, 17, 20, 22.) For the reasons stated below, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED**.

## I. BACKGROUND

This matter arises from Plaintiff's removal from the Monroe, North Carolina Board of Adjustment by City Council vote. (Doc. No. 1, pp. 5–9.) The City Council appointed Plaintiff to the Board of Adjustment in December 2020 and reappointed him to a second term in December 2023. (Id. at 5.) The Board of Adjustment is "a quasi-judicial body responsible for the disposition of applications for special use permits or variances and appeals from municipal administrative bodies, including City Code Enforcement." (Doc. No. 3-1, p. 2; see also Doc. No. 1, p. 3.) Because Board of Adjustment members cannot serve more than two consecutive terms of three years each,

---

[1] Plaintiff "requests summary judgment on the issue of whether the City violated his due process rights by removing him from the Board of Adjustment without notice, cause, or any opportunity to be heard" and "requests that the question of damages and other proper remedies proceed to trial." (Doc. No. 15-1, p. 1, n.1.)

N.C. Gen. Stat. § 160D-302(a); Monroe City Code § 32.071(B), Plaintiff could not have been reappointed after his second term ended.

During the City Council's August 13, 2024, meeting, Councilman James Kerr made a motion to remove Plaintiff from the Board of Adjustment. (Doc. No. 1, p. 6.) The motion passed 5-2, removing Plaintiff from his position on the Board of Adjustment. (Id. at 6–7.) Plaintiff did not attend the August 13 meeting, and the meeting agenda did not mention him. (Id. at 5, 7.) Plaintiff does not know why he was removed, as Councilman Kerr declined to provide a reason for his motion. (Id. at 6.) A subsequent motion to reconsider Plaintiff's removal failed. (Id. at 7.) The City of Monroe is soliciting applications to fill Plaintiff's seat on the Board of Adjustment, which it can do at any regular or special meeting. (Doc. No. 1, pp. 3, 8.)

On September 18, 2024, Plaintiff filed the present lawsuit alleging a claim for deprivation of Fourteenth Amendment procedural due process under 42 U.S.C. § 1983 and a claim for declaratory judgment. (Doc. No. 1.) Plaintiff also moved for a temporary restraining order and a preliminary injunction. (Doc. No. 3.) The Court denied both motions, finding that Plaintiff had not sufficiently established a likelihood of irreparable harm as required for a preliminary injunction. (Doc. Nos. 4, 10.) The parties then filed cross-motions for summary judgment. (Doc. Nos. 15, 16.) The Court conducted a Judicial Settlement Conference on May 5, 2025, which was unsuccessful. (Minute Entry, Settlement Conference, May 5, 2025.)

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. at 248–49.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. LP, 213 F.3d 175, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818 (4th Cir. 1995).

In addressing a motion for summary judgment, the Court "'must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations.'" Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021) (quoting Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018)) (cleaned up); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150

(2000); Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Additionally, "[m]ere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citation omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

### III. DISCUSSION

Plaintiff brings a claim for violation of his procedural due process rights pursuant to 42 U.S.C. § 1983 and a claim for declaratory judgment. (Doc. No. 1, pp. 9–11.) Plaintiff and Defendant both seek summary judgment on both claims. As a preliminary matter, Plaintiff states that there is no dispute of material fact, (Doc. No. 15-1, p. 9), and Defendant does not appear to disagree. Therefore, the Court is tasked only with determining whether Plaintiff or Defendant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).

A.   **Plaintiff's Claim for 42 U.S.C. § 1983 Violation (Count 1)**

The parties both seek summary judgment on Plaintiff's claim for violation of his Fourteenth Amendment procedural due process rights based on his removal from the Board of Adjustment without sufficient cause or notice and an opportunity to be heard. (Doc. No. 15-1, pp. 4–12; Doc. No. 17, pp. 4–10.)

The due process clause of the Fourteenth Amendment to the United States Constitution bars states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Section 1983 imposes liability on the government for "subject[ing] . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. To allege a § 1983 procedural due process claim, a plaintiff "must show '(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate.'" Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011) (quoting Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 145 (4th Cir. 2009)).

1. **Property Interest**

The Court first evaluates whether Plaintiff had a property interest in his position. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Mallette v. Arlington Cnty. Emps. Supplemental Ret. Sys. II, 91 F.3d 630, 634 (4th Cir. 1996) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577. Therefore, the Court must "look for an independent source of a 'claim of entitlement'" to determine whether Plaintiff has a protected property interest. Mallette, 91 F.3d at 635.

The United States Supreme Court has held that the following individuals have property interests: "a person receiving welfare benefits under statutory and administrative standards

defining eligibility for them"; "a public college professor dismissed from an office held under tenure provisions and college professors and staff members dismissed during the terms of their contracts"; and "a teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment." Roth, 408 U.S. at 576–77 (internal citations omitted).

Plaintiff argues that North Carolina General Statutes § 160D-302(a) serves as an independent source giving rise to a property interest because it "limits municipal discretion to remove board of adjustment members post-appointment." (Doc. No. 15-1, p. 5.) Under this statute, "[a] local government may by ordinance provide for the appointment and compensation of a board of adjustment consisting of five or more members, each to be appointed for three-year terms." N.C. Gen. Stat. § 160D-302(a).

In Bd. of Adjustment of Town of Swansboro v. Town of Swansboro, 432 S.E.2d 310 (N.C. 1993), the North Carolina Supreme Court affirmed a grant of summary judgment in favor of a town Board of Commissioners that, after notice and hearing, abolished a board of adjustment—thus ending its members' terms—and then created a new board of adjustment with new members. The court specifically noted that: N.C.G.S. § 160A-388(a)[2] did not "mandate[] that all Board of Adjustment members serve for three years"; "pursuant to N.C.G.S. § 160A-146,[3] the Board of

---

[2] N.C. Gen. Stat. § 160A-388(a) stated that "[t]he city council may provide for the appointment and compensation of a board of adjustment consisting of five or more members, each to be appointed for three years." It has since been repealed and is now codified at N.C. Gen. Stat. § 160D-302, which reads in relevant part: "A local government may by ordinance provide for the appointment and compensation of a board of adjustment, consisting of five or more members, each to be appointed for three-year terms."

[3] This section provides:

> The council may create, change, abolish, and consolidate offices, positions, departments, boards, commissions, and agencies of the city government and generally organize and reorganize the city government in order to promote orderly and efficient administration of city affairs, subject to the following limitations:
> 
> (1) The council may not abolish any office, position, department, board, commission, or

Commissioners has the authority to abolish a board of adjustment"; and "'[t]he fact that defendants' action had the effect of shortening the terms of some of the old Board members is not dispositive.'" Id. at 313–14.

In Frank v. Savage, 695 S.E.2d 509 (N.C. Ct. App. 2010), the North Carolina Court of Appeals determined that the trial court erred by dismissing claims brought by appointees to the Yancey County Department of Social Services Board of Directors after their appointments were declared invalid and revoked by the Board of Commissioners. The court looked in part to N.C. Gen. Stat. § 153A–76, which states that "the board of commissioners may not change the composition or manner of selection of a local board of education, the board of health, the board of social services, the board of elections, or the board of alcoholic beverage control." Id. at 513–14 (cleaned up).

Contrasting Swansboro, the Court of Appeals determined that because North Carolina law proscribes a board of commissioners from "chang[ing] the composition or manner of the selection of . . . the board of social services . . . ," the plaintiffs had stated a claim that the Board of Commissioners violated N.C. Gen. Stat. § 108A-4, which established a three-year term for members of the county board of social services. Id. The Court of Appeals specifically determined that "[t]he result in Swansboro depended on the Board of Commissioner's power to dissolve an administrative board, the establishment of which was not required by law," and "[t]he corollary to that principle is that when the establishment of the administrative board is required by law, the

---

agency established and required by law;
(2) The council may not combine offices or confer certain duties on the same officer when such action is specifically forbidden by law;
(3) The council may not discontinue or assign elsewhere any functions or duties assigned by law to a particular office, position, department, or agency.

N.C. Gen. Stat. § 160A-146.

Board of Commissioners lacks the authority to abolish said board, in whole or in part." Id. at 513–14.

Plaintiff relies on Swansboro to argue that his term length could not have been reduced. (Doc. No. 15-1, p. 5.) Plaintiff points to the Swansboro court's conclusion that "construing N.C.G.S. § 160A-388(a) and N.C.G.S. § 160A-146 together, if the Board of Commissioners creates a separate Board of Adjustment, then it must consist of at least five appointees, each for three-year terms," and "[s]uch terms may not be reduced by the Board of Commissioners as long as that Board of Adjustment is in existence." Id. at 313. Accordingly, Plaintiff reads § 160D-302(a), the current equivalent of § 160A-388(a), as affording "a city discretion whether to form a board of adjustment in the first instance, but once that board is formed, cities have no discretion as to term length—the statute mandates a three-year term." (Doc. No. 15-1, p. 5.)

Critically, neither Swansboro nor Frank addresses the issue of whether board of adjustment members have a property interest in their positions, the relevant inquiry here. As Defendant points out, in Swansboro, "the Supreme Court of North Carolina never discussed whether § 160D-302(a) created a protected property interest in the appointment." (Doc. No. 17, p. 9.) However, both cases are instructive in that they establish that the entire board of adjustment can be abolished. See Board of Adjustment, 432 S.E.2d at 313–14 ("[T]he prohibition contained in N.C.G.S. § 160A-388(a) against the reduction of the length of the terms of the members of the existing Board of Adjustment does not diminish the authority of the Board of Commissioners to abolish the Board of Adjustment pursuant to N.C.G.S. § 160A-146.").

To have a property interest in his position, Plaintiff must establish that he had a "legitimate claim of entitlement" to his position—more than a "unilateral expectation" or an "abstract need or desire" for his position. Mallette, 91 F.3d at 634 (quoting Roth, 408 U.S. at 577). "[T]he distinction

8
Case 3:24-cv-00845-FDW-DCK    Document 36    Filed 09/03/25    Page 8 of 12

between an 'entitlement' and a mere 'expectancy' must necessarily depend on the degree to which the decision-makers' discretion is constrained by law." Mallette, 91 F.3d at 635 (quoting Bd. of Pardons v. Allen, 482 U.S. 369, 382 (1987) (O'Connor, J., dissenting)). But where the entire Board of Adjustment can be abolished, Plaintiff cannot have had a property interest in his position.

Moreover, boards of adjustment are notably absent from North Carolina General Statutes § 153A–76, which states that "[t]he board [of commissioners] may not change the composition or manner of selection of a local board of education, the board of health, the board of social services, the board of elections, or the board of alcoholic beverage control." N.C. Gen. Stat. § 153A–76(4); Frank, 695 S.E.2d at 513–14 ("The result in Swansboro depended on the Board of Commissioner[s'] power to dissolve an administrative board, the establishment of which was not required by law. The corollary to that principle is that when the establishment of the administrative board is required by law, the Board of Commissioners lacks the authority to abolish said board, in whole or in part.") (citations omitted)). No such similar statute expressly forbids local governments from changing the composition or manner of the selection of board of adjustment members, and decision-makers' discretion as to boards of adjustment is not as constrained as for the boards enumerated in § 153A–76.

This distinction also forecloses Plaintiff's argument that North Carolina state law supersedes Monroe City Code § 32.201(E). Plaintiff argues that North Carolina state law supersedes § 32.301(E) of the City Code, § 160D-302(a)'s three-year fixed term provision controls, and § 32.301(E) is void and unenforceable as applied to him. (Doc. No. 15-1, p. 10.) An "ordinance, to the extent it conflicts with the general State law, is invalid." North Carolina v. Williams, 196 S.E.2d 756, 758 (N.C. 1973); King v. Town of Chapel Hill, 758 S.E.2d 364, 373 (N.C. 2014). Monroe City Code § 32.201(E) provides that "all [Board of Adjustment] members

serve at the pleasure of the City Council and may be removed at any time with or without cause at the discretion of the City Council." (Doc. No. 15-1, p. 9.) However, in addition to setting a fixed term, North Carolina law also contemplates situations where Board of Adjustment members do not serve their entire term, although the statute is not clear as to why members would not do so. N.C. Gen. Stat. § 160D-302(a) (permitting a local government to "appoint and provide compensation for alternate members to serve on the board [of adjustment] in the absence or temporary disqualification of any regular member . . . ").

Plaintiff further argues that "[i]t is widely recognized that a statute setting a fixed term for an appointee *per se* eliminates any implied right of the municipality to remove the appointee at will." (Doc. No. 15-1, p. 7.) In support of this argument, however, Plaintiff does not point to any binding precedent. Plaintiff cites only state law, all of which is from states outside the Fourth Circuit. (Doc. No. 15-1, pp. 7–8.) Moreover, authority from outside of the Fourth Circuit suggests that individuals in positions similar to the one held by Plaintiff do not have a property interest in their positions. Pleva v. Norquist, 36 F. Supp. 2d 839, 848 (E.D. Wis. 1999), aff'd, 195 F.3d 905 (7th Cir. 1999); Russo v. City of Philadelphia, 819 F. Supp. 2d 405, 415 (E.D. Pa. 2011).

Accordingly, in the absence of binding authority specifically establishing that Plaintiff had a property interest in his position, the Court declines to reach that conclusion.

### 2. Deprivation by State Action and Constitutionally Inadequate Procedures

As to the second two requirements to bring a § 1983 procedural due process claim, the Due Process Clause "requires that before state-created property rights may be cut off by [government actors], their owner must, to the extent possible, be given, at a minimum, notice and an opportunity to be heard why they should not be." Pritchett v. Alford, 973 F.2d 307, 317 (4th Cir. 1992). Proper

notice "must be reasonably calculated to convey information concerning a deprivation." Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 146 (4th Cir. 2014).

However, the notice and hearing requirements are not triggered if the plaintiff does not have a property interest. Because the Court concludes that Plaintiff did not have a protected property interest in his seat, the Court need not evaluate whether the procedures employed were constitutionally inadequate. The Court therefore grants summary judgment in favor of Defendant on Plaintiff's claim for procedural due process violation pursuant to 42 U.S.C. § 1983.

**B.     Plaintiff's Claim for Declaratory Judgment (Count 2)**

Plaintiff next seeks a declaratory judgment that (1) section 32.201(E), as applied, is void and unenforceable because it conflicts with North Carolina General Statutes section 160D-302(a); (2) section 32.201(E), as applied, is unconstitutional because it deprives Plaintiff of a property right without notice or cause; (3) the City violated Plaintiff's procedural due process rights when it terminated his membership on the Board of Adjustment without legally sufficient cause; (4) the City violated Plaintiff's procedural due process rights when it terminated his membership on the Board of Adjustment without notice and an opportunity to be heard; and (5) the City's decision to remove Plaintiff from the Board of Adjustment is void and of no effect, and Plaintiff is entitled to immediate reinstatement to his position. (Doc. No. 1, pp. 10–11.)

However, Plaintiff's declaratory judgment claim fails for the same reasons his procedural due process claim fails, and the Court grants summary judgment in favor of Defendant on Plaintiff's declaratory judgment claim.

11
Case 3:24-cv-00845-FDW-DCK     Document 36     Filed 09/03/25     Page 11 of 12

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 15), is **DENIED**, and Defendant's Motion for Summary Judgment, (Doc. No. 16), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (Doc. No. 7), is **DENIED AS MOOT**.

The Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

Signed: September 3, 2025

Frank D. Whitney
Senior United States District Judge